1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LYNN MICHAEL, | Case No.  1:21-cv-00395-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 29, 30) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Stephanie Lynn Michael ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social Security Act.   The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]   For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 6, 10, 11.)

**II.**

**BACKGROUND**[2]

On April 22, 2017, Plaintiff concurrently filed applications for Social Security benefits under Title II and Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning April 1, 2016.  (Admin. Rec. ("AR") 271–79, collectively ECF Nos. 26-1 and 26-2.)  The claims presently at issue allege disability based on fibromyalgia, degenerative disc disease of the cervical spine and lumbar spine with sciatica and radiculopathy, neuropathy, migraines/headaches, irritable bowel syndrome with diarrhea, bilateral optic nerve cupping, obesity, degenerative joint disease and bursitis of the left hip, obstructive sleep apnea, major depressive disorder and dysthymia, anxiety, borderline personality disorder, adjustment disorder and obsessive-compulsive disorder.[3]  (See AR 28 (citing AR 373–74) (Plaintiff's administrative hearing brief).)  At the time Plaintiff's application was filed, Plaintiff was thirty-eight years old with a high school education and a diploma for pharmacy technician work from the Institute of Technology, and was able to communicate in English.  (See AR 33, 53–55.)

Plaintiff's claims were initially denied on October 16, 2017, and denied upon reconsideration on January 19, 2018.  (AR 202–08.)  On October 28, 2019, Plaintiff, represented by attorney Malinda Davies, appeared via videoconference for an administrative hearing before Administrative Law Judge Cynthia K. Hale (the "ALJ").  (AR 78–102.)  Vocational expert ("VE") Daniel Best also testified at the hearing.  On January 6, 2020, the ALJ issued a decision denying benefits.  (AR 17–41.)  On August 11, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 6–11.)

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] Plaintiff was previously found to be not disabled in a final decision dated May 19, 2010, based on prior applications for disability benefits and SSI filed on September 29, 2008.  (See AR 20.)  The ALJ found Plaintiff sufficiently rebutted the presumption of continuing non-disability by presenting "changed circumstances" as to certain aspects of the records and evaluated Plaintiff's present claim accordingly.  (See AR 21, 23); Chavez v. Bowen (Chavez), 844 F.2d 691 (9th Cir. 1988) (principles of res judicata apply to SSA decisions; claimant may rebut presumption of non-disability by showing "changed circumstances" indicating a greater disability).

Plaintiff initiated this action in federal court on March 11, 2021, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the operative administrative record on May 27, 2022.  (ECF No. 26.)  On July 7, 2022, Plaintiff filed an opening brief.[4]  (ECF No. 29.)  On July 28, 2022, Defendant filed a brief in opposition.  (ECF No. 30.)  No reply brief was filed and the matter has been deemed submitted.

**III.**

**LEGAL STANDARD**

**A.      The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt.

---

[4] In her opening brief, which is 29 pages exclusive of tables, Plaintiff requests leave to file a motion exceeding the 25-page limit.  (ECF No. 29 at 2.)  In light of the extensive medical records pertaining to this matter and multiple issues addressed in the briefing, the Court grants Plaintiff's request.

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

2   ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114;

3   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation,

4   the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

5   for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035,

6   1039 (9th Cir. 1995)).

7           **B.    Standard of Review**

8           Congress has provided that an individual may obtain judicial review of any final decision

9   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

10  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

11  the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

12  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

13  the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

14  405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

15  evidence which, considering the record as a whole, a reasonable person might accept as adequate

16  to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

17  (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

18  Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

19  the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

20  not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

21  scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

22  CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

23  citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

24  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

25  454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

26  falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

27  409 (2009).

28          Finally, "a reviewing court must consider the entire record as a whole and may not affirm

1  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

2  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

3  Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

4  review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

5  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

6  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

7  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

8  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

9  400 F.3d 676, 679 (9th Cir. 2005)).

10                                                  **IV.**

11                             **SUMMARY OF RELEVANT RECORD**

12      **A.      Hearing Testimony**

13      Plaintiff alleges she has chronic severe pain without activities, and that any activity

14  aggravates her fibromyalgia, arthritis, and headaches.  (AR 318.)  She is 5'6" and weighs 332

15  pounds.  (AR 94.)  She previously worked as a pharmacy technician (classified as light and semi-

16  skilled, specific vocational preparation ("SVP") 3), a personal companion (classified as a "home

17  attendant," medium and semi-skilled, SVP 3), and an apartment manager (classified as light and

18  skilled, SVP 5).  (AR 94–98.)  Plaintiff testified that her conditions affect her ability to lift, squat,

19  bend, stand, reach, sit, kneel, hear, climb stairs, remember, complete tasks, concentrate, and use

20  her hands.  (AR 323.)

21      At the October 28, 2019 hearing, Plaintiff testified that she lives with her sister and

22  brother-in-law.  (AR 82.)  On a typical day, Plaintiff testified she would wake up, go to the

23  restroom, get something to eat, watch some TV, and then, if she has "a doctor's appointment or

24  something like that," will shower and go to the appointment.  (AR 83.)  She doesn't need help

25  getting in and out of the shower, or getting dressed.  (AR 92.)  Plaintiff testified she daily has

26  shaky hands and headaches.  (AR 88.)  Plaintiff testified she can't move her neck or look around

27  with her eyes or it will make her headache worse.  (AR 89.)  Plaintiff testified she can do "a little

28  chores," such as her laundry, putting dishes in the dishwasher, and cleaning her bathroom

counter, but says she is limited in doing them due to pain in her neck, back, hip, and heels.  (AR 84.)  Plaintiff drives to her own appointments, the pharmacy twice a week, "something like that," and does her own grocery shopping.  (AR 91.)  She can walk about a block before resting.  (Id.)  She can sit for maybe an hour before she has to get up.  (AR 92.)  She testified she doesn't have problems reaching in front, out to the side, or overhead.  (Id.)  She can lift a gallon of milk.  (Id.)  Plaintiff testified if she "push[es] too far," she must lie down, sometimes for the rest of the day.  (AR 85.)  Plaintiff testified she would lie down and fall asleep for at least an hour, twice a day, but had difficulty sleeping at night.  (AR 85–86.)  Plaintiff testified her worst pain is in her back and neck, for which she has been receiving injections, but she claims they do not help for very long.  (AR 86, 93.)  She testified that standing, walking, and turning her head make the neck and back pain worse.  (AR 93–94.)  Her doctor recommended physical therapy ("PT").  (AR 89.)

Plaintiff testified her depression makes her feel sad.  (AR 90.)  She stays at home because she gets nervous to interact socially with others.  (AR 87.)  She has difficulty focusing on watching her TV shows and reading her bible.  (AR 83–84.)  Plaintiff testified she treats with Dr. Morgan, her psychiatrist, and "Jose," her therapist.  (AR 93.)  She "[does] OK" following instructions.  (AR 323.)

Impartial VE Daniel Best also testified at the hearing.  (AR 97–102.)  The ALJ presented a number of hypotheticals.  The first hypothetical concerned an individual with Plaintiff's past work experience, who was limited to sedentary work, except she would need to be able to alternate between sitting and standing every half-hour to an hour for a very brief position change while continuing to work at the workstation; could do no overhead reaching; should do no more than frequent handling and fingering; would need to have no prolonged awkward positions of the head so they're neither looking up or down for prolonged periods; would need to be able to turn the body to look right and left; and would be limited to simple tasks, with no more than occasional interaction with the general public.  (AR 98.)  The VE testified the individual could perform jobs such as, for example, final assembler, bonder operator, or ampule sealer, and that there would be other titles with similar job numbers also available.  (AR 98–99.)

The second hypothetical concerned the same individual as the first hypothetical, but who,

due to symptoms they were experiencing, was going to be off task 15% of the workday.  The VE testified this individual would not be able to sustain competitive work.  (AR 99.)

The third hypothetical concerned the same individual as the first hypothetical, but would require two extra fifteen-minute breaks on a consistent basis.  The VE testified that in his experience, that individual could find a job that accommodated a total of thirty minutes per day in extra breaks, maximum, but if the total break time was greater than thirty minutes, she would not be able to sustain competitive work.  (AR 99–100.)

The fourth hypothetical concerned the same individual as the first hypothetical, but would be expected to leave early or be absent two workdays a month on a consistent basis.  The VE testified the aforementioned jobs would then be ruled out.  (AR 100.)

On cross-examination, Plaintiff's attorney posed a hypothetical with the same individual as in the ALJ's first hypothetical, but limited to occasional finger feeling and handling.  The VE testified the aforementioned jobs would then be ruled out.  (AR 101.)

The VE affirmed his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except for the aspects of work such as interpersonal interaction, prolonged positioning of the head and neck, alternation of sitting and standing as described, rest breaks, or time spent on or off task.  As to those areas, the VE indicated his testimony was based on his experience.  (AR 101–02.)

### B.    Medical Opinions and Prior Administrative Findings

In the May 19, 2010 prior decision, the ALJ found that, as of May 19, 2010, Plaintiff was able to perform a full range of work at all exertional levels with the exception of forceful pushing, pulling, lifting, twisting and grasping with her bilateral upper extremities and prolonged working at or above shoulder height.  (AR 110.)

State agency medical consultant H. Samplay, M.D. reviewed all of the medical records as of June 2017, including the previous ALJ decision from May 2010, in which the decision was nonsevere.  (AR 128–31.)  Dr. Samplay concluded Plaintiff had no significant abnormalities or limitations; she had a history of fibromyalgia but no ongoing severe impairments.

In July 2017, examining psychological consultant Ekram Michiel, M.D. examined

Plaintiff.   (AR 842–46.)   Plaintiff complained of depression, anxiety, memory issues and concentration; with a history of pain in both wrists, carpal tunnel syndrome, obesity, arthritis, and chronic headaches.   (AR 842.)   On mental status examination, Dr. Michiel noted Plaintiff was fairly groomed, overweight, normal posture and gait, kept fair eye contact, normal speech with slight latency and generally normal body movements.   (AR 843.)   Plaintiff was oriented to person, place, and date; had generally intact memory.   (AR 843–44.)   Regarding testing Plaintiff's attention/concentration, Plaintiff could repeat a digit span five out of five times forward and four times backward correctly.   (AR 844.)   She was able to recall three out of three items immediately and two after five minutes.   (Id.)   Judgment was intact.   (Id.)   Dr. Michiel diagnosed Plaintiff with "mood disorder, depressed, due to direct physiological effect of general medical condition, fibromyalgia" based on Plaintiff's depressed mood and flat affect.   (Id.)   Based on this examination, Dr. Michiel opined Plaintiff is able to maintain attention and concentration and carry out simple job instructions; is able to relate and interact with coworkers, supervisors and the general public; but is unable to maintain attention and concentration to carry out an extensive variety of technical and/or complex instructions.  (AR 844–45.)

State agency psychological consultant Harvey Bilik, Psy.D. reviewed the medical records as of August 2017.   (AR 129, 131–32, 134–36.)   As to the "B criteria," Dr. Bilik found that Plaintiff has a "mild" limitation in ability to understand, remember, or apply information, and "moderate" limitations in ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself; Dr. Bilik found the evidence did not establish the presence of "C criteria."   (AR 131–32.)   Agreeing with the psychiatric CE of Dr. Michiel, Dr. Bilik found no support for any "marked" limitations in any domain.   (AR 132.)   Dr. Bilik concluded Plaintiff has no understanding and memory limitations and is moderately limited in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting.  (AR 135–36.)

State agency medical consultant G. Dale, M.D. reviewed all of the medical records as of September 2017.  (AR 129–31.)  He noted Plaintiff does her own personal care, prepares simple meals, does laundry, drives, shops, and manages money.  He noted Plaintiff complained of worsening back pain and was scheduled for PT but did not show.  X-rays showed mild changes in the lower cervical spine.  Dr. Dale opined Plaintiff has an acute back strain, mild; he did not see evidence of lasting change.  He also found Plaintiff's physical impairments are nonsevere.

State agency psychiatric consultant Yanira Olaya, M.D. reviewed the medical records as of September 2017.  (AR 132–33, 136–38.)  Dr. Olaya found Plaintiff has a "mild" limitation in the ability to adapt or manage oneself and "moderate" limitations in the ability to understand, remember, or apply information; interact with others, and concentrate, persist, or maintain pace; she found the evidence did not establish the presence of "C criteria."  (AR 132.)  Dr. Olaya concluded Plaintiff has understanding and memory limitations.  (AR 136.)  Dr. Olaya determined Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions;  maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public.  (AR 136–37.)

In December 2017, treating physician Sarah Morgan, M.D. completed a check-the-box Mental Residual Functional Capacity (MRFC) Questionnaire.  (AR 1615–17.)  Dr. Morgan opined that Plaintiff's mental limitations preclude performance for more than 15 percent of an 8-hour workday in nearly all areas.  (AR 1615–16.)  Dr. Morgan further opined that Plaintiff would be absent at least five days per month and would be unable to complete the workday at least five times per month.  (AR 1617.)

State agency psychological consultant Hillary Weiss, Ph.D. reviewed the medical records as of December 2017.  (AR 174–75, 178–80.)  In revieing the records, Dr. Weiss noted Plaintiff's medications were prescribed by her primary care physician, that there was no evidence of hospitalizations, extended decompositions, or suicide attempts, and that the consulting physician continued to endorse mild to moderate depression and anxiety secondary to Plaintiff's physical

condition, with objective findings within normal limits.  (AR 175.)  Dr. Weiss found that Plaintiff can understand and remember simple and detailed (but not complex) instructions, and may benefit from reduced interactions with the public. (AR 180.)  Dr. Weiss therefore adopted the prior decision and determined Plaintiff has "mild" limitations in the ability to understand, remember, or apply information and to adapt or manage herself; and she determined Plaintiff has "moderate" limitations in the ability to interact with others and concentrate, persist, or maintain pace.  (AR 175.)

In December 2017, consultative medical examiner Roger Wagner, M.D. examined Plaintiff.  (AR 1618–23.)  Plaintiff reported she can cook, clean, drive, shop, and perform her own activities of daily living ("ADLs") without assistance, and walks some for exercise.  (AR 1619.)  During the examination, Dr. Wagner noted Plaintiff was easily able to get up out of a chair and walk at a normal speed to the examination room without assistance.  (Id.)  Plaintiff sat comfortably, was easily able to get on and off the examination table, was easily able to bend over at the waist to take off and put on her shoes, and was able to bend over from a standing position to pick up a shoe off the ground.  (Id.)  She was able to walk on toes and heels, with a negative Romberg test.  (AR 1620.)  Plaintiff also demonstrated full range of motion of the cervical spine, the lumbar spine, both hips, both knees, both ankles, both shoulders, both elbows, and both wrists, with negative seated straight leg raising (SLR) tests bilaterally, and positive supine SLR tests at 80 degrees.  (AR 1621.)  Finally, Plaintiff's motor strength, sensation to touch, and muscle bulk and tone were normal in all extremities.  (Id.)  Plaintiff's diagnosis was hypertension, fibromyalgia, and thoracolumbar back pain.  (AR 1622.)  Dr. Wagner opined that Plaintiff is capable of standing/walking up to six hours with normal breaks; no sitting limitation; can lift/carry fifty pounds occasionally, and twenty-five pounds frequently; is capable of frequent climbing, stooping, and crouching; and has no manipulative or workplace environmental activities limitations.  (Id.)

State agency medical consultant P. Frye, M.D. reviewed Plaintiff's medical records as of January 2018.  (AR 173–74, 177–78.)  Based on "some findings of back pain," Dr. Frye found Plaintiff capable of medium exertional work with additional "frequent" postural limitations, that

is, he determined Plaintiff can: occasionally lift/carry up to fifty pounds; frequently lift/carry up to twenty-five pounds; stand/walk up to six hours in an eight-hour day; sit up to six hours in an eight-hour day; and frequently climb and crouch; with no limitations with pushing/pulling, balancing, stooping, kneeling, and crawling; and no manipulative, visual, communicative or environmental limitations.  (AR 174, 177–78.)

### C.    The ALJ's Decision

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920.  (AR 23–34.)  First, the ALJ determined Plaintiff meets the insured status requirements of the SSA through December 31, 2020.  (AR 24.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date.  (Id. (citing 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.).)  At step two, the ALJ found Plaintiff had the severe impairments of small fiber neuropathy, fibromyalgia, obesity, degenerative disc disease of the cervical spine with history of mild strain, degenerative disc disease of the lumbar spine with protrusion and sciatica, mild left hip degenerative joint disease, depression, personality disorder and anxiety disorder.  (Id. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)  The ALJ also noted Plaintiff had been diagnosed with obstructive sleep apnea ("OSA"), bilateral carpal tunnel syndrome and bilateral epicondylitis, mixed conductive and sensorineural hearing loss of the right ear with unrestricted hearing in the left ear, irritable bowel syndrome, nonintractable non-migrainous headaches, and bilateral optic nerve cupping, but determined that these conditions— considered singly or together—were non-severe.  (AR 24–25.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.)  (AR 25.)  In particular, the ALJ considered Listings 1.02 (major dysfunction of a joint(s) (due to any cause)), 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.08 (personality and impulse-control disorders).  (Id.)

The ALJ determined Plaintiff's small fiber neuropathy and mild left hip degenerative joint

disease did not meet or medically equal Listing 1.02 because Plaintiff does not require use of a hand-held assistive device that limits the functioning of both upper extremities (id. (citing AR 324, 333, 1620, 1622, 2139)), and her conditions do not affect the use of her upper extremities. The ALJ determined Plaintiff's degenerative disc disease of the cervical spine with history of mild strain and degenerative disc disease of the lumbar spine with protrusion and sciatica did not meet or medically equal Listing 1.04 because there is no evidence in the medical record of nerve root compression (id. (citing AR 2259)); no medical source had diagnosed spinal arachnoiditis; and Plaintiff does not require the use of a hand-held assistive device that limits the functioning of both upper extremities.  And the ALJ determined Plaintiff's fibromyalgia and obesity[8] did not medically equal any listing—by itself or in combination with at least on other medically determinable impairment—but indicated they were both considered in her assessment of Plaintiff's RFC determination.  (AR 26.)

As to Plaintiff's mental impairments, the ALJ applied the special technique for evaluating the severity of mental impairments by rating Plaintiff's level of impairment in the four functional areas under paragraph B (the "paragraph B criteria"), and found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of Listings 12.04, 12.06, or 12.08 because her mental impairments did not result in at least one extreme or two marked limitations[9] out of the four broad areas of functioning.  (Id.)  More specifically:

(1)  Plaintiff has a "mild" limitation in "understanding, remembering, or applying information" because, while Plaintiff's intelligence was estimated to be in the borderline range during a single psychotherapy session in May 2017 (id. (citing AR 804)), the majority of Plaintiff's other examinations yielded findings of normal or average intelligence (id. (citing Ex. AR 739, 875, 937, 952, 1092, 1292, 1677, 1688, 1712, 1895, 1909, 1916, 1926, 1937, 1943,

---

[8] During the alleged period of disability, Plaintiff weighed between 305 and 350 pounds, with a BMI of between 49.2 and 56.6 (a person with a BMI of 30.0 or higher is generally considered obese, though each case is evaluated independently).  (See AR 26 n.1.)

[9] An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  See 20 C.F.R. §§ 404.1520a, 416.920a (describing ALJ's special technique for evaluating paragraph B criteria).

1950, 1955, 2065)), and she demonstrated intact memory at her consultative psychological examination (id. (citing AR 844)) and at other examinations (id. (citing AR 830, 837, 1092, 1457, 1466, 1847, 1895, 1916, 1926, 1931, 1937, 1943, 1950, 1955, 2153, 2158, 2163, 2167, 2172–73, 2277)).

(2) The ALJ found Plaintiff has a "moderate" limitation in "interacting with others" because, while Plaintiff appeared depressed or anxious at a number of examinations (id. (citing AR 739, 804, 875, 906, 937, 952, 1291, 1676, 1688, 1712, 1895, 1909, 1916)), she presented normal mood and affect at several other examinations (id. (citing AR 406, 425, 439, 450, 463, 476, 489, 502, 515, 524, 568, 571, 576, 778, 798, 815, 918, 1260, 1279, 1311, 1331, 1656, 1670, 1726, 1734, 1741, 1747, 1754, 1762, 1769, 1776, 1782, 1789, 1797, 1804, 1811, 1816, 1836, 1854, 1860, 1866–67, 1876, 1889, 1902, 1931, 1937, 1943, 1950, 1955, 2065, 2094, 2101, 2215, 2172, 2217, 2221, 2229, 2232)); and Plaintiff was generally found to be cooperative (AR 26–27) (citing AR 875, 937, 952, 1291, 1646, 1656, 1670, 1676, 1688, 1712, 1909, 1916, 1902, 1937, 1943, 1950, 1955, 2065, 2139)).

(3) The ALJ found Plaintiff has a "moderate" limitation in "concentrating, persisting, or maintaining pace" because, while Plaintiff displayed somewhat impaired attention and concentration at her consultative psychological examination (she could perform a digit span exercise only after having the digits recited twice) (AR 27 (citing AR 844)), Plaintiff otherwise consistently demonstrated intact concentration and attention (id. (citing AR 1902, 1909, 1916, 1931, 1937, 1943, 1950, 1955, 1926, 2277)), and she consistently exhibited full orientation (id. (citing AR 567, 844, 1656, 1669, 1726, 1734, 1741, 1747, 1754, 1762, 1769, 1776, 1782, 1789, 1797, 1804, 1811, 1816, 1836, 1847, 1854, 1860, 1866, 1876, 1889, 1895, 1902, 1909, 1916, 1926, 1931, 1937, 1943, 1950, 1955, 2084, 2086, 2088, 2094, 2097, 2101, 2139, 2215, 2229, 2232, 2273, 2277)).

(4) Finally, the ALJ found Plaintiff has a "moderate" limitation in "adapting or managing oneself" because of her generally intact judgment and insight, and her report of being able to independently perform ADLs. (AR 27.)  More specifically, the ALJ noted that, between April and July 2017, Plaintiff's judgment appeared to be mildly impaired and her insight to be partial or

minimal (id. (citing AR 739, 804, 875, 906)); yet, her judgment and insight otherwise appeared to be normal, appropriate, or intact (id. (citing AR 844, 952, 1292, 1656, 1677, 1688, 1712, 1856, 1895, 1902, 1909, 1916, 1926, 1931, 1937, 1943, 1950, 1955)).  Moreover, the ALJ found that, although at times Plaintiff reported some impairment of her ability to perform ADLs (id. citing AR 831, 836, 1457, 1466, 2114, 2172)), at her December 30, 2017 consultative physical examination, Plaintiff reported that she can perform her own ADLs without assistance (id. (citing AR 1619)).

The ALJ also considered whether the "paragraph C" criteria were satisfied, and determined that they were not.  (Id.)  The ALJ reached this conclusion after reviewing Listings 12.04, 12.06, or 12.08 and determining Plaintiff's medical record does not demonstrate medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that diminishes the symptoms and signs of her mental disorders, with Plaintiff achieving only marginal adjustment.  (Id.)  The ALJ also noted no State agency psychological consultant concluded Plaintiff met or medically equaled a mental listing.  (Id.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform sedentary work, but with the following non-exertional limitations:

> **the claimant must be able to alternate between sitting and standing every half-hour to an hour for a very brief position change while continuing to work at the workstation; can do no overhead reaching; can do no more than frequent handling and fingering; can have no looking up or looking down for long periods; and must be able to turn the body to look right and left; and is limited to simple job tasks and no more than occasional interaction with the general public.**

(AR 28 (citing 20 C.F.R. §§ 404.1520c, 404.1529, 404.1567(a), 416.920c, 416.929, 416.967(a), and SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 33 (citing 20 C.F.R. §§ 404.1565, 416.965).)

At step five, considering Plaintiff's age, education, work experience and RFC, and the VE's testimony, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of:

(1) Final Assembler (DOT 713.687-018, sedentary exertional level and SVP 2 rating, with approximately 30,000 positions available in the national economy);

(2) Bonder Operator (DOT 726.685-066, sedentary exertional level and SVP 2 rating, with approximately 16,500 positions available nationally); and

(3) Ampoule Sealer (DOT 559.687-014, sedentary exertional level and SVP 2 rating, with approximately 9,000 positions available in the national economy).

(AR 33–34 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT except as to interpersonal interaction, prolonged positioning of the head and neck, alternation of sitting and standing, rest breaks and time spent off-task.  (AR 34 (citing SSR 00-4p, available at 2000 WL 1898704).)  As to these considerations, however, the ALJ confirmed the aforementioned jobs were nevertheless available to someone with Plaintiff's additional limitations, and relied upon the VE's testimony based on his expertise, education, and experience in the field of vocational rehabilitation.  (Id.; see also AR 101–02, 368–71.)

Therefore, the ALJ found Plaintiff was not under a disability at any time from April 1, 2016 (alleged onset date) through January 6, 2020 (the date of ALJ's decision).  (AR 39 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

## V.

### DISCUSSION

Plaintiff presents three issues on appeal: (1) whether the ALJ failed to identify an apparent conflict between the DOT and VE testimony per the requirements of SSR 00-4p; (2) whether the ALJ's physical RFC is supported by substantial evidence of record; and (3) whether the ALJ's rejection of treating psychiatrist Dr. Morgan's MRFC is supported by substantial evidence.  (ECF No. 29 at 7.)   Consistent with the five-step disability analysis, the Court shall first address the MRFC, then the physical RFC, and whether any conflict existed between the DOT and VE's testimony.

### A.       Whether the ALJ Properly Evaluated Dr. Morgan's MRFC

Plaintiff contends the ALJ's determination that Plaintiff's treating psychiatrist Dr.

16

Morgan's MRFC was "less than persuasive" is not supported by substantial evidence.  (ECF No. 29 at 31–36.)

### 1.   Legal Standard

The Social Security Administration revised its regulations regarding the consideration of medical evidence—applying those revisions to all claims filed after March 27, 2017.   See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Because the instant claims were filed after March 27, 2017, they are subject to the revised Social Security Administration regulations.  Id.

Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). However, the ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

The "treating source rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. See, e.g., Trevizo, 871 F.3d at 675. The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. See 20 C.F.R. §§ 404.1520c, 416.920c; Revisions, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–53 (eliminating "treating source rule"). In sum, the requirement that an ALJ provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion no longer applies, as this "measure of deference to a treating physician is no longer applicable under the 2017 revised regulations." Jean T. v. Saul, No. 20cv1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."); Jones v. Saul, No. 2:10-cv-01273 AC, 2021 WL 620475, at *6–10 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to Chevron deference, and supersede prior caselaw "inconsistent with the new regulation"); Meza v. Kijakazi, No. 1:20-cv-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("courts in this circuit have rejected the notion that the treating physician rule still pertains to claims filed after March 27,

1    2017").

2          Nonetheless, the new regulations still require the ALJ to explain his reasoning and to

3    specifically address how he considered the supportability and consistency of the opinion.  20

4    C.F.R. §§ 404.1520c, 416.920c; see P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3

5    (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,'

6    deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ

7    must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s]

8    all of the medical opinions.") (citation omitted); see also Allen T. v. Saul, No. EDCV 19-1066-

9    KS, 2020 WL 3510871, at *3 (C.D. Cal. Jun. 29, 2020) ("It remains to be seen whether the new

10   regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's

11   reasoning. . . .").  As always, the ALJ's reasoning must be free of legal error and supported by

12   substantial evidence.  Ford, 950 F.3d at 1154.  Indeed, the Court notes that, for example, where an

13   ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new

14   regulatory standard, it would almost certainly pass scrutiny under the old standard as well.  See

15   Andrews, 53 F.3d at 1041 (noting that inconsistency with independent clinical findings in the

16   record is a specific and legitimate reason to reject a contradicted opinion of a treating physician).

17   Thus, even under the new regulatory framework, the Court still must determine whether the ALJ

18   adequately explained how he considered the supportability and consistency factors relative to

19   medical opinions and whether the reasons were free from legal error and supported by substantial

20   evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal.

21   May 14, 2021).

22          2.      Dr. Morgan's December 5, 2017 Opinion

23          On December 5, 2017, treating physician Sarah Morgan, M.D. completed a check-the-box

24   MFRC Questionnaire.  (AR 1615–17.)  The record is a questionnaire with specific questions and

25   subsets of types of limitations that the medical professional is to opine as to the severity of each

26   subset using a scale of severity from Category I to Category IV.  According to the form, Category

27   I does not preclude performance of any aspect of the job; Category II precludes performance for

28   five percent of an eight-hour workday (24 minutes); Category III precludes performance for ten

percent of an eight-hour workday (48 minutes); and Category IV precludes performance for fifteen percent or more of an eight-hour workday (72 minutes).

Dr. Morgan reported she saw Plaintiff every 1–3 months, as needed, since June 26, 2017. (AR 1615.)  Plaintiff's diagnosis was dysthymia, fibromyalgia, anxiety, and OCD.  (Id.)  Dr. Morgan noted Plaintiff's current medications included Topamax, Paxil, gabapentin, and Duloxetine, which caused side effects of drowsiness.  (Id.)

The first subset of limitation areas pertains to mental abilities, understanding, and memory.  (Id.)  Dr. Morgan opined that Plaintiff's mental limitations preclude performance for ten percent of an eight-hour workday (Category III) in her ability to: remember locations and work-like procedures; and understand and remember very short and simple instructions.  Dr. Morgan opined that Plaintiff's mental limitations preclude performance for fifteen percent or more of an eight-hour workday (Category IV) in her ability to: understand and remember detailed instructions.  Where asked to explain her responses, Dr. Morgan left the form blank, with no further explanation.

The second subset pertains to mental abilities, sustained concentration, and memory.  (AR 1616.)  Dr. Morgan opined that Plaintiff's mental limitations preclude performance for ten percent of an eight-hour workday (Category III) in her ability to: carry out very short and simple instructions; maintain attention and concentration for extended periods of time; and make simple work-related decisions.   Dr. Morgan opined that Plaintiff's mental limitations preclude performance for fifteen percent or more of an eight-hour workday (Category IV) in her ability to: carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  Where asked to explain these findings as to the second subset, Dr. Morgan left the form blank.

The third subset pertains to social interactions.  (Id.)  Dr. Morgan opined that Plaintiff's

mental limitations preclude performance for five percent of an eight-hour workday (Category II) in her ability to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness.   Dr. Morgan opined that Plaintiff's mental limitations preclude performance for ten percent of an eight-hour workday (Category III) in her ability to: ask simple questions or request assistance; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.   Dr. Morgan opined that Plaintiff's mental limitations preclude performance for fifteen percent or more of an eight-hour workday (Category IV) in her ability to: interact appropriately with the general public; and accept instructions and respond appropriately to critiques from supervisors.   Where asked to explain these findings as to the third subset of social interaction, Dr. Morgan left the form blank.

The fourth subset pertains to adaptation.  (Id.)  Dr. Morgan checked the box for Category I (no limitation) for the area of: be aware of normal hazards and take appropriate precautions.   Dr. Morgan opined that Plaintiff's mental limitations preclude performance for fifteen percent or more of an eight-hour workday (Category IV) in her ability to all other areas of this category: respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.   Where asked to explain these findings as to the fourth subset of adaptation, Dr. Morgan left the form blank.

Dr. Morgan further opined Plaintiff's "depression causes her pain to be more severe and vice versa" and that Plaintiff would be absent at least five days per month and would be unable to complete the workday at least five times per month.  (AR 1617.)

3.     The ALJ's Findings as to Dr. Morgan's Opinion

Here, the ALJ found Dr. Morgan's opinion, based on her MRFC questionnaire (AR 1615–17 (Ex. B19F)) to be "less than persuasive" because:

> Dr. Morgan's opinion is not supported by any accompanying explanation.  Her opinion is also not supported by her own progress notes, which indicate that the claimant demonstrated normal memory and cooperative behavior (B10F/29, 60, 91, 106).  Finally, her opinion is inconsistent with other evidence of the claimant's generally normal intelligence, consistently intact memory, generally cooperative behavior, generally intact concentration and attention, consistently full orientation, generally intact judgment and insight and capacity to perform ADLs without assistance (B5F/2, B7F/75,

B8F/5-6, 11-12, B9F/3, B12F/47-48, B17F/13, 22, 122, B20F/2, B21F/25, 33, 46-47, B22F/2-3, 14, 38, 53, 60, 67, 73, 80, 88, 95, 102, 108, 115, 123, 130, 137, 142, 162, 173, 180, 182, 186, 192, B23F/2, B25F/6, 12, 19, 26, 33, 43, 48, 54, 60, 67, 72, 182, B26F/1, 3, 5, 11, B28F/2, 6, B31F/2, 27, 41, 46, 51, 55, 60, B35F/6, 12, 23, B37F/3, 7).  Based on its inconsistency with the medical evidence, the opinion of Dr. Morgan is found to be less than persuasive.

(AR 32.)

### 4.    Plaintiff's Arguments

Plaintiff argues the ALJ "cherry picked" records in determining that Dr. Morgan's MRFC was not consistent with medical records demonstrating generally normal findings, and failed to discuss contrary records indicating Plaintiff's mood was "depressed," "anxious," and other abnormal MSE findings by Dr. Morgan, as well as Plaintiff's report of "worsening symptoms." (ECF No. 29 at 32–36);  see Ghanim v. Colvin, 763 F.3d 1154 (9th Cir. 2014) (holding that "the ALJ improperly cherry-picked" characterizations by the physician out of context "instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment").

### 5.    Analysis

The Court finds the ALJ's evaluation of Dr. Morgan's opinion is supported by and consistent with the record.

As previously noted, under each of the four categories of mental limitations ((1) mental abilities, understanding, and memory; (2) mental abilities, sustained concentration, and memory; (3) social interaction: and (4) adaptation), Dr. Morgan was invited to write into the form the reasons in support of her findings, but instead she left the form blank.  While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017), the Ninth Circuit has nevertheless held "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." Ford, 950 F.3d at 1155 (citations omitted).  Thus, an ALJ may discount an unexplained check-the-box form opinion that is unsupported or inconsistent with the treatment records from that medical provider.  See id.; Flowers v. Colvin, No. 3:16-CV-05025 JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016).

Here, in addition to accurately noting that Dr. Morgan's opinion "is not supported by any accompanying explanation" (AR 32), the ALJ also determined that Dr. Morgan's opinion was inconsistent with her own progress notes, which generally indicated "normal memory and cooperative behavior" (id. (citing AR 875, 906, 937, 952)).  For example, in June 2017, Plaintiff treated with Dr. Morgan on complaints of anxiety/fearful thoughts, compulsive thoughts (including tendencies to pray a certain way and wash her hands multiple times), depressed mood, difficulty concentrating, difficulty falling and staying asleep, depression, excessive worry, fatigue, feelings of guilt and invulnerability, hallucinations (visual), loss of appetite, paranoia, poor judgment, racing thoughts and restlessness.  Plaintiff reported her depression was impacted by financial worries due to unemployment, social isolation, and her pain.  (AR 869, 874, 881.) On mental status examination, Dr. Morgan noted Plaintiff's mood appeared depressed, anxious; affect flat; she had avoidant eye contact and partial insight.  However, Dr. Morgan also found Plaintiff's appearance, posture, activity, perception, thought content, cognition, and judgment were all "within normal limits"; no hallucinations were evidenced; Plaintiff's attitude was cooperative; her speech was clear; thought process was logical; and she demonstrated "average intelligence." (AR 875.)  Plaintiff's diagnosis was obsessive-compulsive disorder and dysthymia and she was directed to continue her medications and follow up with her therapist.  (AR 877.)

On July 27, 2017, during treatment with Dr. Morgan, Plaintiff similarly complained of anxious/fearful thoughts, depressed mood, difficulty sleeping and concentrating, worry, fatigue, and guilt.  During the mental status examination, Dr. Morgan noted Plaintiff's mood appeared depressed, anxious; and she had avoidant eye contact.  However, Dr. Morgan also found Plaintiff's appearance, posture, activity, perception, thought content, cognition, insight, and judgment were all "within normal limits"; Plaintiff's attitude was cooperative; affect full; speech was clear; thought process was logical; and she demonstrated "average intelligence."  She was again treated with medication and directed to follow up with her therapist.  (AR 931, 934, 937, 938.)  Similarly, on August 24, 2017, Dr. Morgan treated Plaintiff for the same complaints.  Dr. Morgan reported the same mental status examination findings as in July 2017.  (AR 946, 949, 952.)  Incongruity between a treating physician's opinion and the medical records constitutes a

specific and legitimate reason for rejecting the physician's opinion of the patient's limitations. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Ford, 950 F.3d at 1155; see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."). Thus, the ALJ's discounting of Dr. Morgan's opinion was appropriate.

The ALJ also determined Dr. Morgan's opinion was inconsistent with the longitudinal medical record (AR 32). The ALJ noted the record generally demonstrated findings of "normal intelligence, consistently intact memory, generally cooperative behavior, generally intact concentration and attention, consistently full orientation, generally intact judgment and insight and capacity to perform ADLs without assistance." (id. (citing AR 567, 739, 830–31, 836–37, 844, 1291–92, 1457, 1466, 1619, 1648, 1656, 1669–70, 1676–77, 1688, 1712, 1726, 1734, 1741, 1747, 1754, 1762, 1769, 1776, 1782, 1789, 1797, 1804, 1811, 1816, 1836, 1847, 1854, 1856, 1860, 1866, 1876, 1889, 1895, 1902, 1909, 1916, 1926, 1931, 1937, 1943, 1950, 1955, 2065, 2084, 2086, 2088, 2094, 2097, 2101, 2114, 2139, 2153, 2158, 2163, 2167, 2172, 2215, 2229, 2232, 2273, 2277).) These findings were also supported by the medical opinions of Drs. Bilik (AR 129, 131–32, 134–36), Olaya (AR 132–33, 136–38), and Weiss (AR 174–75, 178–80), which the ALJ found to be "persuasive" on the basis that their findings were "consistent with the aforementioned medical records, and were well-supported by Plaintiff's consultative psychological examination that revealed no significant abnormalities other than a mood disorder secondary to the impact of her general medical condition." (AR 31 (citing AR 843–44).)

On this basis as well, the ALJ's discounting of Dr. Morgan's opinion was appropriate. Tommasetti, 533 F.3d at 1041; Bray, 554 F.3d at 1228; Andrews, 53 F.3d at 1041; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (a non-treating physician's opinion may also serve as a "legitimate reason for rejecting a treating or examining physician's opinion . . . when it is consistent with other independent evidence in the record."). Thus, the Court finds the ALJ has identified substantial evidence in support of her finding that the medical record and much of Dr. Morgan's own treatment notes do not support Dr. Morgan's opinion that Plaintiff

would be precluded from performing mental tasks fifteen percent or more of an eight-hour workday, or that she would be absent at least five days per month and would be unable to complete the workday at least five times per month.

As to Plaintiff's argument that the ALJ "cherry-picked" records in support of her decision, the Court finds this argument is unavailing.  In reaching her decision, the ALJ carefully summarized the longitudinal medical records, noting a significant degree of the same complaints and treatment records referenced by Plaintiff in her moving papers, and all relevant clinical findings, such as MRIs and x-rays.  (Compare AR 29–31 with ECF No. 29 at 8–19.)  The ALJ also acknowledged Plaintiff's reporting of symptoms of chronic severe pain that limited her abilities in range of activities; this is the basis for the ALJ's determination that Plaintiff must be limited to simple job tasks with only occasional interaction with the general public.  (See AR 28 (citing AR 78–102, 318–26, 373–74); AR 30–31.)  Indeed, the ALJ found the opinion of Dr. Michiel only "somewhat persuasive" because his opinion failed to include a limitation of occasional interaction with the public, which the ALJ determined was justified due to Plaintiff's "depressed or anxious mood at a number of examinations."  (AR 32 (citations to the record omitted).)  On this record, the Court does not find the ALJ engaged in cherry-picking of evidence, but rather weighed numerous records of Plaintiff's various complaints through the relevant time period.  Indeed, the Court has reviewed the underlying treatment records and confirms the ALJ's summary of Plaintiff's treatment notes fairly represents the longitudinal record.  See, e.g., Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014) (ALJ's reliance on examples of a broader development in the medical records does not constitute "cherry-picking").  At most, Plaintiff has suggested an alternative interpretation of the evidence consistent with a finding of disability; however, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Burch, 400 F.3d at 679; Smolen, 80 F.3d at 1279; Thomas, 278 F.3d at 955.

In sum, the ALJ's analysis addressed the persuasiveness, including supportability and consistency of Dr. Morgan's opinion, as contrasted with the opinions of Dr. Michiel, the prior administrative medical findings, and the cumulative medical and non-medical record, and that

analysis is supported by substantial evidence in the record.  Ford, 950 F.3d at 1154; Martinez, 2021 WL 1947238, at *3.  Accordingly, the Court finds the ALJ did not err in her evaluation of Dr. Morgan's medical opinion, as asserted in her MRFC questionnaire.

**B.     Whether the ALJ's Physical RFC Is Supported By Substantial Evidence**

Plaintiff argues the physical RFC is not supported by substantial evidence.  (ECF No. 29 at 27–31.)

1.     Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195.

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).

///

2.    Analysis

Here, the ALJ properly synthesized the medical and other evidence to reach the physical RFC determination, which is supported by substantial evidence in the record.  Biestek, 139 S. Ct. at 1153; Stubbs-Danielson, 539 F.3d at 1173–74.  As previously discussed, the ALJ carefully examined the longitudinal record and detailed the clinical findings that supported her conclusions.  (AR 24, 28–32.)  The ALJ also described certain treatment notes in detail, as relevant to her analysis of Plaintiff's history of fibromyalgia, musculoligamentous strain of the cervical spine, and low back pain with bilateral sciatica.  (See id.)  Some of these notes are highlighted in the portions of the ALJ's decision discussing her reasons for exertional and manipulative limitations in the physical RFC determination:

> The claimant's physical impairments require exertional and manipulative limitations.  For instance, the claimant's history of cervical spine strain and imaging revealing degenerative disc disease of the cervical spine pain (B1A/8, B21F/50) necessitate limitations on overhead reaching and the claimant's history of bilateral carpal tunnel syndrome (B1A/8) suggest limitations to frequent handling and fingering.  However, the claimant's demonstration of full range of motion of the cervical spine and thoracolumbar spine and all extremities at multiple examinations (B20F/4, B31F/5, B36F/10-11) indicate that she is otherwise capable of sedentary exertional work if she is not required to look up or down for prolonged periods and is allowed to alternate positions as described above and turn her body to look left and right.

(AR 30.)   On this record, the Court concludes the ALJ made specific citations to the administrative record that constitute substantial evidence in support of the RFC determination.

In evaluating Plaintiff's challenge to the ALJ's physical RFC determination, the Court notes Plaintiff has not challenged the ALJ's evaluation of the medical opinions regarding Plaintiff's physical limitations, the weight the ALJ accorded to Plaintiff's testimony in light of her findings in the medical record, or the ALJ's step three determination that Plaintiff's impairments did not meet or equal a listed impairment or meet the "paragraph C criteria"; and such challenges are therefore waived.  See Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review . . . issues which are

argued specifically and distinctly in a party's opening brief.").

Instead, Plaintiff argues that, having rejected all of the physical RFC opinions, the ALJ did not point to evidence from any specific treating or examining medical professional to support her RFC assessment, but impermissibly crafted it from her own lay interpretation of the raw objective medical evidence of record.  (ECF No. 29 at 27.)  Further, Plaintiff contends the ALJ improperly interpreted the "raw data" of her October 13, 2017 skin biopsy for epidermal nerve fiber density after Dr. Wagner "misinterpreted" the record "as 'showing no lumbar or lower extremity neuropathy."  (Id. at 29–30 (citing AR 1340).)  Plaintiff argues that, rather than interpret this raw data, the ALJ had a duty to further develop the record by ordering another consulting examination ("CE").  These arguments are not well-taken.

As an initial matter, the Court notes Plaintiff's contention that the ALJ "rejected" all of the medical opinions and the presumption that she therefore did not rely on any of them in crafting the RFC appears to somewhat mischaracterize the ALJ's decision.  The ALJ declined to give "controlling weight" to any one medical opinion under the supportability and consistency standards (AR 31); however, she accepted as persuasive some findings set forth in the medical opinions, in addition to relying on the underlying treatment notes in the medical record.  For example, although the ALJ ultimately found Dr. Frye's determination that Plaintiff could perform medium exertional work not persuasive because she found the severity of Plaintiff's impairments justified greater limitations, the ALJ appears to have accepted to some extent Dr. Frye's opinion that postural limitations were required, in light of Plaintiff's history of fibromyalgia and low back pain.  (See id.)  Similarly, the ALJ discounted the prior administrative opinions to the extent they found Plaintiff's impairments were non-severe, determining Plaintiff's more recent medical records justified a more restrictive RFC assessment.  (Id.)

Regardless, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x. 374, 375 (10th Cir. 2016) (ALJ need not "parrot . . . exact descriptions of . . . limitations" to reach

an RFC determination consistent with the medical record and claimant's limitations).  Rather, it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan, 169 F.3d at 603 (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  To the extent Plaintiff suggests otherwise, her argument is unavailing.

Plaintiff's contention that the ALJ interpreted the "raw data" of her October 13, 2017 skin biopsy for epidermal nerve fiber density (ECF No. 29 at 30 (citing AR 1340)) is also unavailing.  A simple review of the record reveals the premise upon which Plaintiff's contention is based—that Dr. Wagner "misinterpreted" the October 2017 nerve test—is inaccurate.  Plaintiff claims Dr. Wagner "misinterpreted" the record because he stated it showed "no lumbar or lower extremity neuropathy."  However, Dr. Wagner's report actually indicates Dr. Wagner reviewed the records, including the "skin nerve biopsy from October 13, 2017, **with findings consistent with small fiber neuropathy**," *and* "**October 24, 2017, electromyogram nerve conduction studies** which show no lumbar or lower extremity neuropathy."  (AR 1618 (emphasis added).)  Plaintiff's truncated summary of the report, and claim that Dr. Wagner found the skin nerve biopsy from October 13, 2017, "as 'showing no lumbar or lower extremity neuropathy" is thus a misrepresentation of the record, and her argument is unavailing.

Furthermore, the Court notes the prior administrative record reflects that the biopsy was considered at the reconsideration level by Dr. Frye on December 4, 2017.  (See AR 172–74, 192–93.)  On January 17, 2018, Dr. Frye notes the CE reviewed the records and provided a clear picture of Plaintiff's impairments.  (AR 174, 193.)  The ALJ, therefore, did not interpret raw data, but evaluated the medical opinions of record and resolved any conflicts therein, as she was required to do.  Lingenfelter, 504 F.3d at 1042; Morgan, 169 F.3d at 603.

Consequently, Plaintiff's argument that the ALJ erred in failing to properly develop the

1   record by sending Plaintiff to another CE (ECF No. 29 at 30–31) is also unpersuasive.  While

2   "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the

3   claimant's interests are considered,' " Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)

4   (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)), this duty "is triggered only when

5   there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of

6   the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart,

7   427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also

8   Brown v. Berryhill, 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was

9   not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the

10  ALJ was not required to re-contact Brown's doctors or further develop the record . . . .").

11      The Court does not find either of the aforementioned circumstances appears in this matter.

12  Rather, the Court finds the record was adequate to enable the ALJ to evaluate the evidence

13  concerning the severity of Plaintiff's symptoms and reach an RFC determination.  See, e.g.,

14  Agatucci v. Berryhill, 721 Fed. App'x 614, 617–18 (9th Cir. 2017).  Further, the initial burden to

15  submit evidence to establish disability lies with Plaintiff.  See 20 C.F.R. § 404.1512(c) ("You

16  must provide medical evidence showing that you have an impairment and how severe it is during

17  the time you say that you were disabled."); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)

18  (noting the burden to establish disability through step four lies with the claimant).

19      Plaintiff also argues the ALJ did not provide an explanation for the specific limitations she

20  found with respect to sitting/standing, looking up and down, turning the body left and right, and

21  fingering and reaching.  (ECF No. 29 at 29.)  However, as the Court noted, the ALJ discussed the

22  record and specific relevant treatment notes pertaining to Plaintiff's history of fibromyalgia,

23  musculoligamentous strain of the cervical spine, and low back pain with bilateral sciatica, in

24  support of the specific limitations in her RFC determination.  For example, the ALJ found

25  Plaintiff's history of cervical spine strain and imaging revealing degenerative disc disease of the

26  cervical spine necessitated limitations on overhead reaching.  (AR 30; see also AR 31, 32 (citing

27  (AR 1451, 2088, 2104, 2144, 2148, 2156, 2161, 2258, 2260)).)  The ALJ also noted Plaintiff's

28  history of bilateral carpal tunnel syndrome, though "nonsevere," suggested the limitation of

frequent handling and fingering.  (AR 24, 30.)  This Court further notes that, while neither party discusses its relevance, in Plaintiff's prior disability determination, which was never appealed, the RFC determination limited Plaintiff in pushing, pulling, lifting, twisting and grasping with her bilateral upper extremities and prolonged working at or above shoulder height, which the ALJ expressly discusses in the instant decision.  (AR 30 (citing AR 110).)  To the extent such findings were not challenged by Plaintiff or contradicted by new medical evidence, the ALJ's consideration of these prior RFC limitations was relevant to crafting the instant RFC determination.  See Chavez, 844 F.2d at 694 (holding the first ALJ's findings concerning the claimant's RFC, education, and work experience were entitled to some res judicata consideration in subsequent proceedings).

Finally, the Court notes that a showing of unfairness or prejudice resulting from any failure to develop the record is required for remand, Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997), and Plaintiff has not made this requisite showing.  At most, Plaintiff's reference to certain treatment notes in support of her argument that the RFC is not supported by substantial evidence amounts to an attempt to present a different interpretation of the evidence.  However, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

In sum, the Court concludes the ALJ properly synthesized the medical and other evidence to reach the RFC determination, Biestek, 139 S. Ct. at 1153, and the RFC determination is supported by substantial evidence in the record, Stubbs-Danielson, 539 F.3d at 1173–74.  Further, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679.  "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court will not disturb the ALJ's decision with respect to her evaluation of the medical and non-medical record and RFC determination.

**C.**     **Whether Any Conflict Existed Between the DOT and VE's Testimony**

Plaintiff argues the ALJ committed harmful error by failing to identify an apparent

conflict between the DOT and the VE testimony.  (ECF No. 29 at 21–27.)

       1.    Legal Standard

At previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).  Hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. SSR 00-4p, at *2.  The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency.  Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).  Further, the SSA notes neither the DOT nor the VE's evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

       2.    The ALJ's Decision

As previously noted, the ALJ found Plaintiff has the RFC to perform sedentary work, but with the following non-exertional limitations:

> **the claimant must be able to alternate between sitting and standing every half-hour to an hour for a very brief position change while continuing to work at the workstation; can do no overhead reaching; can do no more than frequent handling and fingering; can have no looking up or looking down for long periods; and must be able to turn the body to look right and left; and is limited to simple job tasks and no more than occasional interaction with the general public.**

1  (AR 28 (emphasis in original).)

2       3.     <u>Plaintiff's Arguments</u>

3       Plaintiff argues a conflict existed between the VE evidence and the DOT because the RFC

4  included the limitations of "no overhead reaching . . . no looking up or looking down for long

5  periods; and must be able to turn the body to look right and left," but the DOT contains no

6  specific reference to overhead reaching, looking up or down, or turning the body to look left and

7  right with respect to the three jobs the VE identified for Plaintiff, and the ALJ failed to identify

8  and further resolve this conflict.  (ECF No. 29 at 22, 24–25.)  Further, Plaintiff argues a conflict

9  exists between the limitation of "no overhead reaching" and the DOT's "generic" reaching

10  requirements for the three identified jobs.  (<u>Id.</u> at 25–26.)

11       Plaintiff further argues the three jobs identified by the VE—final assembler, bonder

12  operator, and ampoule sealer—"would logically require a person to use their near visual acuity

13  frequently to hold their head in a fixed, neck position to perform these delicate, intricate tasks,"

14  and that the jobs would require Plaintiff to use "many precise tools . . . that may 'foreseeably' be

15  located above and away from the workstation . . . and [the] need to [retrieve such tools] by

16  reaching upward would logically be part of these three jobs. . . ."  (<u>Id.</u> at 24, 26–27.)  Therefore,

17  Plaintiff argues the ALJ failed to resolve the apparent conflicts between the DOT and the VE

18  evidence.  (<u>Id.</u> at 22–23.)

19       4.     <u>Analysis</u>

20       At the disability hearing, the ALJ presented a hypothetical question that mirrored the RFC

21  determination; in response, the VE testified that Plaintiff could perform not perform her prior

22  work but could, for example, perform jobs as a final assembler, bonder operator, and ampoule

23  sealer.  (AR 34, 98–99.)  The DOT provides the following descriptions for each of the three jobs

24  identified by the VE:

25       A final assembler "Attaches nose pads and temple pieces to optical frames, using

26  handtools: Positions parts in fixture to align screw holes.  Inserts and tightens screws, using

27  screwdriver."  DOT 713.687-018, <u>available at</u> 1991 WL 679271.  The DOT indicates "reaching"

28  exists "frequently" (*i.e.*, 1/3 to 2/3 of the time) in this job.  <u>Id.</u>

1   An ampoule sealer:

2
3       Seals ampoules filled with liquid drug products, preparatory to
        packaging: Rotates neck of ampoule in flame of bunsen burner to
        melt glass.  Grips tip of ampoule, using tweezers, and draws tip
        away from neck to seal ampoule as glass hardens.  Places sealed
4       ampoule in basket for sterilization and inspection.  May hold
        unsealed ampoule against jet of inert gas to displace air.  May
5       immerse sealed ampoules in dye bath to test for leaks.  May tend
        machines that steam-wash and fill ampoules.

6

7   DOT 559.687-014, available at 1991 WL 683782.  The DOT indicates "reaching" exists

8   "frequently" (i.e., 1/3 to 2/3 of the time) in this job.  Id.

9   A bonder operator:

10      Tends automatic bonding machine that bonds gold or aluminum
        wire to integrated circuit dies to connect circuitry to package leads:
11      Reviews schematic diagram or work order to determine bonding
        specifications.  Turns dials to set bonding machine temperature
12      controls and to regulate wire feeding mechanism.  Mounts spool of
        wire onto holder and inserts wire end through guides, using
13      tweezers.  Positions semiconductor package into magazine of
        automatic  feed  mechanism,  and  observes  package,  using
14      microscope or equipment display screen, to ensure connections to
        be bonded are aligned with bonding wire.  Adjusts alignment as
15      necessary.  Activates machine that automatically bonds wire to
        specified connections on semiconductor package leads.  Removes
16      packages from bonding machine and places packages in work tray.
        May test tensile strength of bonded connections, using testing
17      equipment.  May locate connections and bond wire to connect
        circuitry of hybrid circuits, using precision-bonding machine.

18

19  DOT 726.685-066, available at 1991 WL 679631.  The DOT indicates "reaching" exists

20  "occasionally" (i.e., up to 1/3 of the time) in this job.  Id.

21      As apparent from these descriptions, the DOT does not address "overhead reaching," only

22  "reaching" in general.  Plaintiff argues this apparent conflict required ALJ resolution.  Yet, the

23  hearing transcript indicates the ALJ did resolve any apparent conflict.  Importantly, the VE was

24  aware of the specific limitations in the RFC when he testified that a hypothetical person with

25  Plaintiff's RFC could perform the three identified jobs.  (See AR 98–99.)  In compliance with

26  SSR 00-4p, the ALJ also asked the VE whether his testimony was consistent with the DOT.  (AR

27  101.)  The VE testified that it was consistent, although the identified limitations of "interpersonal

28  interaction, prolonged positioning of the head and neck, alternation of sitting and standing as

described, rest breaks or time spent on or off task" were not expressly included in the DOT.  (AR 101–02.)  Rather, the VE testified that his testimony as to the three identified jobs was made based on his experience in the field of vocational rehabilitation.  (Id.; see also AR 368–71.)  On this record, the Court finds the ALJ reasonably relied on the VE's testimony.  See Massachi, 486 F.3d at 1152.

Plaintiff's argument that the ALJ failed to resolve a conflict between VE testimony and the DOT because the DOT's "general" reaching descriptor is insufficient to address "overhead reaching" is also unavailing.  As Defendant persuasively argues, Plaintiff's contention that the jobs would require her to reach for tools "that may 'foreseeably' be located above and away from the workstation" amounts to little more than lay speculation, which Plaintiff has not supported through the record or legal authority.   The "conflict" Plaintiff identifies, therefore, is not "apparent or obvious."   See Gutierrez v. Colvin, 844 F.3d 804, 807–08 (9th Cir. 2016).  Accordingly, the ALJ was not required to follow up on it.  Id.  To the contrary, courts within the Ninth Circuit have recognized that not every job that requires frequent or occasional "reaching" requires the ability to reach "overhead."  Gutierrez, 844 F.3d at 808.  With respect to the job for final assembler, for example, courts have determined that the tasks identified in the DOT for this job do not involve overhead reaching.  See Sanchez v. Colvin, No. EDCV 14-2204-JPR, 2016 WL 370687, at *16 (C.D. Cal. Jan. 29, 2016) (rejecting identical argument and finding that final assembler tasks indicated in DOT would require only reaching forward and down, not overhead); Martinez v. Colvin, No. 1:14-CV-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (finding no conflict existed because "[i]t is clear that the reaching required to perform these occupations is not overhead, and is consistent with Plaintiff's RFC [limiting overhead reaching]").  For these reasons, Plaintiff's argument is unavailing.

Plaintiff's argument that the ALJ failed to resolve a conflict between the VE's testimony and the DOT with respect to the RFC limitations of "no looking up or looking down for long periods" and "must be able to turn the body to look right and left" is even less persuasive.  As with to the other limitation, Plaintiff's contention that the jobs "would logically require" her to refrain from turning her head amounts to little more than lay speculation, which Plaintiff has not

1  supported through the record or legal authority.  Meanwhile, the DOT does not address these

2  limitations, in any fashion.  Under such circumstances, the Ninth Circuit has indicated there is no

3  conflict for the ALJ to resolve:

4
> A conflict must exist between the VE's testimony and the DOT in
> order to trigger the ALJ's responsibility to resolve the conflict.

5
> Here, the DOT is silent on whether the jobs in question allow for a

6
> sit/stand option . . . There is no conflict.

7  Dewey v. Colvin, 650 Fed. App'x 512, 514 (9th Cir. 2016).  Regardless, the Court concludes any

8  "conflict" Plaintiff identifies is not "apparent or obvious"; therefore, the ALJ had no further duty

9  to reconcile.  Gutierrez, 844 F.3d at 807–08; see also Huerta v. Astrue, No. EDCV 11-1868-

10  MLG, 2012 WL 2865898, at *2 (C.D. Cal. Jul. 12, 2012) (finding the ALJ reasonably relied on

11  VE's testimony that claimant who was required to switch neck positions every fifteen to thirty

12  minutes could perform jobs identified by the VE, "particularly in light of the absence of any

13  obvious contradiction with the DOT description"; holding "There is no indication that the tasks

14  cannot be performed while maintaining a comfortable head position, or that Plaintiff would be

15  unable to switch positions every 15 to 30 minutes."); Lindemann v. Berryhill, No. CV 16-7597-

16  JPR, 2017 WL 2978751, at *5 (C.D. Cal. Jul. 12, 2017) (affirming ALJ reliance on VE testimony

17  where it was "not obvious that 'using . . . monitors' and 'observing television screens' would

18  require an individual to 'keep his head and neck in a fixed position for extended periods.' ")

19  (internal brackets omitted).

20      Finally, the Court notes that Plaintiff's attorney[10] had an opportunity to challenge the

21  VE's findings but did not do so.  (See AR 100–01.)  Thus, the objection is deemed waived.

22  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that, "at least when claimants are

23  represented by counsel, they must raise all issues and evidence at their administrative hearings in

24  order to preserve them on appeal" and rejecting brand new challenge based on VE testimony)).

25      Accordingly, the Court does not see any conflict between the VE testimony and the DOT

26  and concludes the ALJ reasonably relied on the VE's testimony at step five.

27

28
[10] The Court additionally notes Plaintiff was represented by the same law firm at the administrative level that is currently representing her in the instant appeal.

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 29) is DENIED; and

2.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Stephanie Lynn Michael and close this case.

IT IS SO ORDERED.

Dated:   **August 31, 2022**

UNITED STATES MAGISTRATE JUDGE